PINELAND CLUB et al. v. ROBERT et al.

(Circuit Court of Appeals, Fourth Circuit. February 27, 1914.)

No. 1178.

**1. EJECTMENT (§ 95\*)—EVIDENCE—PROOF OF TITLE.**

In ejectment plaintiffs, who neither proved a record title back to the grant, the presumption of a grant by 20 years' possession, nor a statutory title by 10 years' consecutive possession, could not recover without proving that defendants claimed under the party from whom they showed a chain of title as a common source of title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 280–295; Dec. Dig. § 95.\*]

**2. EJECTMENT (§ 95\*)—EVIDENCE—SUFFICIENCY.**

In ejectment by persons claiming under an alleged will of R., who died in 1835, a certificate by an ordinary under the seal of the ordinary's court that a person named had regularly qualified as executrix of the last will of R., releases to her as executrix, for all claims and demands bearing indorsements showing that they were recorded, the sealed acknowledgment from the husband of a daughter of the testator of the receipt of the chattels to which she was entitled, all of which were over 30 years old and self-proving, and a copy of a similar release certified under the hand and official seal of the ordinary as having been recorded, sufficiently showed that such testator left a will which had been duly probated.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 280–295; Dec. Dig. § 95.\*]

**3. EVIDENCE (§ 372\*)—DOCUMENTS—AUTHENTICATION—SUFFICIENCY.**

In ejectment by persons claiming under an alleged will of R., who died in 1835, evidence *held* sufficient to show that a paper purporting to be a copy of such will was a copy thereof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.\*]

**4. WILLS (§ 433\*)—ADMISSIBILITY AS EVIDENCE—CERTIFIED COPIES.**

Though a certificate of the ordinary, dated December, 1852, to a copy of a will, not being under the official seal, did not make it admissible in evidence without further proof, where the existence of the will was established by other evidence, it was admissible as an office copy from the hands of the official custodian of the original to prove the contents of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 924–936; Dec. Dig. § 433.\*]

**5. COURTS (§ 367\*)—UNITED STATES COURTS—STATE LAWS AS RULES OF DECISION.**

The decisions of the Supreme Court of a state as to the construction of devises and dispositions of land in the state contained in a will constitute rules of property to be followed by the United States courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.\*]

**6. EJECTMENT (§ 95\*)—SUFFICIENCY OF EVIDENCE—COMMON SOURCE OF TITLE.**

In ejectment by remaindermen under the will of a testator who died in 1835, evidence *held* sufficient to show that defendant's title was derived through such testator as a common source of title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 280–295; Dec. Dig. § 95.\*]

**7. EJECTMENT (§ 90\*)—SUFFICIENCY OF EVIDENCE—COMMON SOURCE OF TITLE.**

That the defendant in ejectment claims through a common source of title with plaintiff may, in South Carolina, be shown by parol, and need not

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

213 F.—35

be shown by a connected chain of deeds or original documents from the common source to defendant.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 254–277; Dec. Dig. § 90.*]

8. EVIDENCE (§ 354*)—DOCUMENTARY EVIDENCE—ACCOUNT BOOKS.

In ejectment by remaindermen under the will of a testator, who died in 1835, an account book, purporting to have been kept by the testator's widow as executrix and as guardian of a daughter, and to have been produced by her before the ordinary in settlement of her accounts and vouched by him, in which was a charge against the daughter for the purchase of the land in question, was admissible against the defendants in corroboration of parol testimony that the life tenant conveyed to such daughter, who in turn conveyed to defendant's remote grantor, in view of the destruction of records and papers during the war, making resort to secondary testimony necessary, since the entries were made by one whose duty it was to make them, and who had no interest in making them adverse to defendants.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1432–1483; Dec. Dig. § 354.*]

9. LIFE ESTATES (§ 23*)—CONVEYANCE WITH LIVERY OF SEISIN.

Where the son under the will of his father took neither a fee simple absolute, a fee defeasible, nor even a fee conditional, but only an estate for life, with vested remainder to such children as he might leave, such remainder could not be barred by a conveyance by him by feoffment and livery of seisin, under the rule in South Carolina that a contingent remainder might be so barred.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 21, 42–45; Dec. Dig. § 23.*]

10. LIFE ESTATES (§ 28*)—SALE BY LIFE TENANT—PRESUMPTIONS AS TO ORDER OF COURT.

It could not be presumed, in favor of a party claiming under a purchaser from a life tenant who with his predecessors in title had been in possession for nearly 40 years prior to the life tenant's death under deeds purporting to convey a fee, that a court of equity, under its power to do so for the purpose of changing the investment, ordered a sale of the property free from the remainders, where there was no evidence whatever to warrant such presumption, especially where it appeared that the parties interested under the will acted on the assumption that the life tenant took an estate in fee.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 16, 21, 54–56; Dec. Dig. § 28.*]

11. REMAINDERS (§ 17*)—BAR BY ADVERSE POSSESSION.

Limitations, including the 40 years' possession which under the Code confers title, do not run against remaindermen until the falling in of the life estate.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. §§ 12–17; Dec. Dig. § 17.*]

12. REMAINDERS (§ 17*)—BAR BY ESTOPPEL OR LACHES.

The will of a testator, who died in 1835, gave land to a son with remainder to his surviving children. The son conveyed the land, assuming that it gave him a fee. He died in 1897. The records of the register's office and of the court of ordinary were destroyed during the war, and when defendant purchased, the first deed then on record purported to convey a fee and there was nothing to show that the property passed under such will, but inquiry in the neighborhood would have disclosed that the land came from such testator, as well as the terms of the will. The remaindermen took no steps to restore the records, as they might have done under Acts S. C. Dec. 21, 1865, Sept. 20, 1866 (13 St. at Large, pp. 354, 384),

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and Feb. 11, 1871 (14 St. at Large, p. 537), and gave no actual notice of their claim, but it did not appear that they had actual knowledge that the deeds on record purported to convey a fee, or that those claiming under such deeds believed they had an absolute title. *Held,* that the remainder-men were not estopped or barred by laches from asserting their rights, as, in the absence of proof to the contrary, it would be presumed that they supposed that the occupants of the land held under the life tenant, and for his life only, and the statutes mentioned imposed no duty on them to restore the record so as to give notice of the existence of the will and their claims thereunder.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. §§ 12–17; Dec. Dig. § 17.*]

13. LIFE ESTATES (§ 28*)—ACTIONS—CONVEYANCE WITH LIVERY OF SEISIN—PRESUMPTION.

Though parties claiming under a purchaser from a life tenant had been in possession for nearly 40 years under deeds purporting to convey a fee prior to the life tenant's death, it could not be presumed that the life tenant conveyed by feoffment, with livery of seisin thereby destroying the remainders, assuming that they were contingent remainders and could be so destroyed, since a tortious and unlawful act would not be presumed.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 16, 21, 54–56; Dec. Dig. § 28.*]

14. COURTS (§ 367*)—UNITED STATES COURTS—STATE LAWS AS RULES OF DECISION.

A single decision of the higher court of a state upon the construction of a particular devise is not conclusive evidence of the law of the state in a case in a United States court between other parties, involving the construction of the same will, but where any other construction would be at least very doubtful, the court would lean, for the sake of harmony, to an agreement with the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. M. Smith, Judge.

Two actions, by Edward Robert and another and by Pauline Sanders and others, respectively, against the Pineland Club and others. Judgment for plaintiffs in each action, and defendants bring error. Affirmed.

See, also, 139 Fed. 1001; 171 Fed. 341, 96 C. C. A. 233.

The opinions of District Judge Smith on the original hearing and on the motion for a new trial were as follows:

### On Original Hearing.

By stipulation of counsel these two causes were tried together as depending upon exactly the same state of facts, and a jury trial was waived by all parties in both cases, and by written agreement the cases were tried before the court without a jury. The plaintiffs claim title under the will of John H. Robert, Sr., who died on July 4, 1835, and who, the plaintiffs allege, left a will dated December 21, 1833. The will devised both tracts of land in question to the testator's son, Lucius C. Robert. The plaintiffs claim that under the will Lucius took only a life estate with remainder to his children.

Lucius C. Robert, the alleged life tenant, died in 1897, and the present plaintiffs are his children and grandchildren. The defendants' documentary title

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the lands involved in the cases commences with a deed from William M. Bostick, trustee, to Joseph W. Maner, executed in the year 1860, which was lost or destroyed, and the record of which was burned in the war between the states. Thereafter, on June 1, 1867, Bostick, trustee, executed a confirmatory deed, which recites the earlier deed, and which first deed, it recites, was executed in pursuance of a court proceeding in the year 1859, and authorized Bostick, trustee, to sell and convey the land to Joseph W. Maner. The said Maner sold a part of these lands to Maj. William J. Lawton by deed dated January 14, 1874, and the remainder he sold to Warren R. Lawton by deed dated December 5, 1880. The two Lawtons sold and conveyed to John K. Garnett, and Garnett sold and conveyed to the trustees of the Pineland Club. The defendants deny the plaintiffs' title, and allege that they and those under whom they claim have been in continuous, open, notorious, and adverse possession of the land ever since the deed of 1860 from Bostick, trustee, to Maner.

[1] The plaintiffs put in as evidence of their chain of title the will of John H. Robert, Sr., and then prove their descent from Lucius C. Robert, the devisee under that will, under the theory that the will of John H. Robert conveyed a life estate in the property in question to the testator's son, Lucius, with remainder to the children of Lucius, on whose death in 1897 the right to possession accrued to the remaindermen by whom these proceedings were begun as the parties entitled to the estate in fee in remainder after his death. Thus the plaintiffs' chain of title rests on the facts that it is shown that John H. Robert, Sr., was at the time of his death possessed of the lands in question, and therefore was presumptively the owner; that they are the lands referred to in his will as devised to his son Lucius; that his son Lucius took possession and died in 1897; and that the plaintiffs are or represent the remaindermen entitled under the will after the expiration of the life estate of Lucius. Inasmuch, however, as this would only carry the title back to John H. Robert, it would not be sufficient to establish the title of plaintiffs in this case, unless they can prove the defendants also claim from John H. Robert as a common source of title. If the defendants claim through a wholly independent source of title, then the plaintiffs having neither proved a record title, back to the grant, nor the presumption of the grant by 20 years' possession, nor a statutory title by 10 years' consecutive possession, could not recover in this case, but if they have proved that the defendants claim from John H. Robert as the common source of title, and, claiming from that common source of title, hold the lands subject to the provision in the will of John H. Robert, then they would, for the purposes of this case, by their testimony, have established a good prima facie title in themselves (assuming that their construction of the will of John H. Robert is correct), which would entitle them to judgment unless the title so established has been defeated by evidence on behalf of the defendants disproving any derivation from a common source or showing that defendants' possession is based on an independent sufficient title.

To sustain the plaintiffs' title and right to possession in this case it is absolutely necessary that they should establish the will of John H. Robert upon which their whole case depends. This cause on the question of the proof of that will has already been considered by the Circuit Court of Appeals of this circuit in the case of Pineland Club v. Robert, 171 Fed. 341, 96 C. C. A. 233. In the prior trial of this case the defendants sought to establish the will of John H. Robert by proving a certified copy of the will, holding that the mere production of this certified copy was sufficient proof of the will. The Court of Appeals, however, held that the mere production of a certified copy of a will as then produced was not a sufficient proof of the execution and probate of the will, inasmuch as the copy of the will which is made evidence by the statute of the state of South Carolina must be an exemplified copy of the will, and that the copy produced which was unaccompanied by a certificate signed and sealed by the probate judge was not an exemplification. That court held additionally that the act of the state of South Carolina of December, 1865, providing for the recording or registering of instruments where the original record of register has been destroyed, intended that there must be some order of the court recognizing the copy offered to be re-registered and author-

izing its recording, and, in the lack of that, a certified copy of the will which had been recorded or re-registered from a copy which was not an exemplification, as not having the seal of the probate judge, was an insufficient register, as it was the registration of a paper not authorized by law to be registered. That court, therefore, held that the simple production of this certified copy from the register of an unexemplified copy not entitled to be registered was an insufficient establishment of the will. It stated, however, and further held that if the plaintiffs had offered legal proof of the execution of the will in the first instance, and also as to its contents, together with evidence of its loss or destruction, then the copy in question, after being identified as a copy of the original will, would have been competent as secondary evidence. But that court held that on the former trial there was a total lack of proof as to the execution or existence of the original will, and that there seemed to have been no effort on the part of the plaintiffs to lay the foundation for the production of this paper as secondary evidence. A new trial was accordingly ordered.

[2] In the present trial the plaintiffs have endeavored to supplement their proof and produce the evidence of the execution and existence of the will, in the first place, and also as to its contents. They have produced as a witness Pierre Robert, who was a son of John H. Robert, one of the sons of John H. Robert, the testator, and a brother of Lucius C. Robert. Pierre Robert is thus a grandson of Mrs. Ann M. Robert, the widow of John H. Robert, the original testator, and named as executrix in the paper produced as a copy of his will. Pierre Robert testifies that on the death of his father he came into possession of the books and papers of his grandmother, Mrs. Ann M. Robert, which included the following:

(1) A certificate under the hand of W. R. Buckner, ordinary of Beaufort district, duly sealed with the official seal of the ordinary's court for Beaufort district and dated 4th April, 1836, to the effect that Mrs. Ann M. Robert had regularly qualified as executrix of the last will and testament of John H. Robert, late of St. Peter's parish, in the district of Beaufort.

(2) A release dated April 5, 1836, from W. E. Bailey, trustee of Cornelia E. Riley, to Mrs. Ann M. Robert as executrix of the last will and testament of John H. Robert, for all claims and demands. This release from the official indorsement thereon was recorded in the register's office on 6th of June, 1836.

(3 A similar release dated August 9, 1845, from John H. Robert, recorded October 27, 1845.

(4) A similar release dated 19th of February, 1840, from Wm. F. Robert, recorded 25th of May, 1840.

(5) A similar release dated February 19, 1840, from Lucius C. Robert, recorded May 30, 1840.

(6) A sealed acknowledgment from Edward Riley, husband of Cornelia E. Riley (a daughter of the testator), that he had received from Mrs. Ann M. Robert, executrix of John H. Robert, the slaves and other chattels to which his wife was entitled dated January 26, 1836, and recorded February 8, 1836.

All these releases are deeds over 30 years old and prove themselves.

(7) The certified copy of a similar release from Nicholas Cruger and E. A. Cruger, his wife (a daughter of the testator), and Edward Riley, her trustee, dated the 1st of January, 1850; the copy being certified under the hand and official seal of the ordinary for Beaufort district as having been recorded April 12, 1850.

These documents taken together, the certificate of qualification, and the deeds of release showing contemporaneous record, in the opinion of the court, conclusively establish as a conclusion of fact that John H. Robert, of St. Peter's parish in the district of South Carolina, had departed this life about 1836, leaving a last will and testament which had been duly probated in the office of the ordinary for Beaufort district, and on which letters testamentary had been issued to Mrs. Ann M. Robert as executrix.

[3, 4] The next question is as to the contents of the will, viz.: Is the paper produced by the plaintiff purporting to be a copy really such? The paper purporting to be the will of John H. Robert is dated the 21st day of December, 1833. According to the testimony of Pierre Robert this paper was also found

among the papers of Mrs. Ann M. Robert. To it is appended a certificate of Edward F. Morelle, ordinary for Beaufort district, that the paper contains a true copy of the last will and testament of John H. Robert, the certificate being dated the 31st day of December, 1852. The plaintiffs have also proved that Edward F. Morelle was the ordinary of Beaufort district at that date, and that the signature to this certificate is in his handwriting. The official seal is not appended to this certificate, and for that reason it has been held an insufficient certificate by the Court of Appeals for this circuit in the case referred to, from the fact it was not under the seal of the court. As stated before, however, this ruling was only to the effect that the mere production of a paper, not duly signed and sealed as required by the statute, is not sufficient to admit it as testimony as permitted by the statute. In the opinion of this court, however, the existence of the will having been already established by a certificate under the hand of the probate judge, and the official seal of the court as well as the other documents already referred to, this copy under the hand of the ordinary is admissible as an office copy from the hands of the official custodian of the original to prove what were the contents of the will. This copy as produced purports to be a copy of the will of John H. Robert of St. Peter's parish, Beaufort district, and constitutes his wife, Ann M. Robert, the executrix of his will, in so far entirely agreeing with the statements contained in the contemporaneous certificate and old deeds above alluded to. In addition, however, the plaintiffs have produced transcripts of record from the court of common pleas for Charleston county, being transcripts of record now in that court, but formerly in the old court of equity for Charleston district when the distinction between the courts of equity and courts of law existed. One of these transcripts is in the case of a petition ex parte Ann M. Robert, Nicholas Cruger and Elizabeth A. Cruger, his wife, for the appointment of Edward Riley as trustee under the marriage settlement of Mr. and Mrs. Cruger, and to invest the fortune of Mrs. Cruger in Georgia. The entire record in those matters is no longer extant, but the question went up to the Court of Appeals in Equity, and is reported 2 Strob. Eq. (S. C.) 86. The printed statement of the case states that John Robert left a will dated the 21st of December, 1833, which was probated by Mrs. Ann M. Robert. It also gives an extract from the will which agrees with the copy now produced, and states other facts corroborative of the matters stated in the copy produced.

The court, therefore, finds that these ancient records, together with the certificate signed but unsealed of Morelle, establish that the paper purporting to be a copy of the will of John H. Robert is a copy of that will, and so holds as a conclusion of fact, and that the plaintiffs in this case have by the best evidence available established the execution, the existence, and the probate of the will of John H. Robert, and that the copy produced in evidence is a copy of that will.

[5, 6] The clause of that will relied upon by the plaintiffs to establish that Lucius C. Robert took only a life estate under the will of John H. Robert has been construed by the Supreme Court of South Carolina in the case of Robert v. Ellis, 59 S. C. 137, 37 S. E. 250. The decisions of the Supreme Court of the state in the construction of wills as to the law governing devises and dispositions of land in the state constitute rules of property law to be followed by this court. Whilst a distinction has been drawn between a general rule established by such decisions and the interpretation given to a particular will in a particular case as depending on the special wording of the document in question, yet the generality of the application of the construction given by the Supreme Court to this will brings it within the class of decisions to be followed by this court. To hold otherwise would present the spectacle of one set of claimants in possession of a part of the lands of John H. Robert under the construction given his will by the Supreme Court of the state, and a wholly different set in possession of another part under a different construction of the same words given by this court. Following the conclusions and principles adjudicated by that court in that case, this court holds as a conclusion of law that under the will of John H. Robert his son Lucius C. Robert took only a life estate in the property in dispute in this case. This would establish the claim of the plaintiffs, provided they can establish that the defendants also

claim under John H. Robert, and not through an independent source. It is admitted that the original documentary source of title produced by defendants in this case is the deed from W. M. Bostick, trustee, to Joseph W. Maner, dated the 1st of January, 1867. This deed recites that Wm. B. Villard and Harriet E. Villard, his wife, in the year 1859 instituted proceedings in the court of equity for Beaufort district against the said W. M. Bostick, as trustee, requiring that he be directed to sell and convey to Joseph W. Maner the Cotton Hill and Pineland tracts, and thereafter that the court, by final decree, directed the said trustee, W. M. Bostick, to sell and convey to Joseph W. Maner the Cotton Hill, and Pineland tracts, and thereupon W. M. Bostick, trustee, in the year 1860, did actually sell and convey to the said Joseph W. Maner the said tracts of land, but that the deed was, with the record thereof, destroyed in the late war, so that said Joseph W. Maner was unable to show title to the estates, and in consideration thereof the said W. M. Bostick, as trustee, by way of re-execution of the original deed of conveyance, executed that deed to convey them to Joseph W. Maner.

[7] It is admitted that the tracts of land conveyed therein are the same as the tracts of land in dispute in this case. This runs the possession of the lands back to W. M. Bostick, trustee of Wm. B. Villard and Harriet E. Villard. It appears to be settled by the law of South Carolina that the fact that the defendant claims through a common source of title with the plaintiff may be shown by parol, and it is not necessary to show a connected chain of deeds or written documents from the common source to the defendant. To carry the title back from Bostick, trustee, to John H. Robert, the plaintiffs have produced the testimony of several old residents of the vicinity, and especially of Maj. W. J. Lawton, an old gentleman in his eighty-third year, who had lived all his life in the neighborhood of these lands, and of their owners, and who subsequently himself had purchased part of this land and sold it to Garnett. He was only five years younger than Lucius C. Robert. Mr. Lawton testified that Bostick, as trustee for Villard, purchased from Mrs. Cruger, a sister of Lucius C. Robert. He testified that after the death of John H. Robert, the testator, the Cotton Hill and Pineland tracts went into the possession of Lucius C. Robert, the devisee named in the will, and that Lucius C. Robert, after having been in possession of these properties, they next went to his sister, Mrs. Cruger, and from Mrs. Cruger they were sold to and went into the possession of W. M. Bostick, trustee for Villard. He testified that the Miss Robert who married Cruger was Miss Elizabeth A. or Elizabeth Ann Robert. The testimony of the other parol witnesses is substantially to the same effect.

To corroborate this testimony the plaintiffs have produced the transcripts above referred to, and another from the same court in the case of Nicholas Cruger v. Elizabeth Ann Cruger et al. The transcript in the earlier case of Ex parte Ann M. Robert contains the decree of the chancellor made the 1st of March, 1845, expressly authorizing the purchase of Cotton Hill for Miss Elizabeth A. Robert.

In the transcript in the case of Ex parte Cruger and Wife, the report of the master, dated May 9, 1848, states that the estate of Mrs. Cruger (who was Miss Elizabeth A. Robert) consisted inter alia of a plantation called Cotton Hill and the statement of her guardian and trustee, Mrs. Ann M. Robert, annexed to the report, is that this plantation Cotton Hill had been purchased for $3,000 out of the income of her daughter's estate. The later transcript in Cruger v. Cruger is only pertinent as apparently showing that Mrs. Cruger's property had been invested in Georgia, and therefore the Cotton Hill place must have been sold by her subsequently to her marriage.

[8] In addition to these transcripts the defendants have produced an old account book, also found by Pierre Robert among the papers of Mrs. Robert, purporting to be the account book of Mrs. Ann M. Robert as executrix of the estate of John H. Robert in account with that estate, and also her account as guardian of Miss E. A. Robert, which bears the attestation at different periods of the ordinary of Beaufort county, but not under seal of court. This book shows charged against Miss E. A. Robert, afterwards Mrs. Nicholas Cruger, the sum of $3,000, for the purchase of Cotton Hill planta-

tion on the 24th day of March, 1845. The book carries every appearance of authenticity as the account book kept by Mrs. Ann M. Robert, and produced by her before the ordinary in settlement of her accounts and vouched by him.

This book would not be admissible as original testimony of the facts stated in it as against the defendants. In view of the destruction of records and papers during the war in the part of the state in which the property in dispute is situated, which has made it impossible in most cases to prove titles by original records or deeds, resort must necessarily be had to secondary testimony, the best available in each case according to the circumstance of the particular case. The entries in the book were made at the time by one whose duty it was to make them, and who had no interest to subserve in making them adverse to the defendants. I think under the circumstances the entries in this book would be admissible as secondary evidence in corroboration of the statements in the transcripts and the testimony of Mr. W. J. Lawton and the other witnesses. The only remaining link that would rest solely on the parol testimony of Mr. Lawton and the other old residents is the conveyance from Mrs. Cruger to W. M. Bostick, trustee. The evidence would appear to sustain the inference that Mrs. Cruger, or rather her trustee on her behalf, had, prior to the proceedings in the court of equity in Charleston in 1855, disposed of all the property she had in South Carolina, except that derived from her mother's estate. The inference follows that Cotton Hill had been sold, and according to the testimony of W. J. Lawton and others, it was sold to Bostick as trustee for the Villards. When Bostick as trustee sold to Maner, it followed that Maner held, and the defendants under him held by a title derived from John H. Robert.

[9] The defendant claims, however, that this claim from a common source may still exist and yet not be incompatible with a perfect title in fee in the defendants. That it is possible that Lucius C. Robert when he sold to his sister sold by feoffment and livery of seisin, which by the law of South Carolina then existing, as claimed by defendants, would be sufficient to bar contingent remainders, and that the defendants, upon the theory that parties are presumed to have followed the right course in executing the conveyance so as to execute a sufficient conveyance to carry the interest intended to be conveyed, are entitled to the inference that in this case a good and sufficient conveyance by feoffment and livery of seisin to bar the contingent remainder was executed by Lucius C. Robert. Whether or not this presumption could be indulged in, however, would depend upon whether the estate in remainder decided by the Supreme Court to exist under the will of John H. Robert was a vested remainder or contingent remainder. After a careful study of the case of Robert v. Ellis, 59 S. C. 137, 37 S. E. 250, it would seem that the only construction to be placed upon the decision of the Supreme Court is that it was a vested remainder. That is, that the children of John H. Robert upon birth took a vested estate in remainder defeasible only upon the death of the child anterior to the death of the father. The Supreme Court expressly decides that under the terms of the will John H. Robert, Jr., took neither a fee simple absolute nor a fee defeasible, nor even a fee conditional, but took an estate for life only, with remainder to any child or children whom he might leave, which, under the terms of that decision, constituted a vested remainder in the surviving children such as the life tenant could not destroy by alienation in his lifetime.

[10] The defendants further urge that they have a right to the presumption that, even if this was a vested remainder, yet that the court of equity having the power for purposes of change of investment to order the sale of property free of remainders by a decree in a cause to which the remaindermen are parties; in this case the sale from Lucius C. Robert was duly authorized by such a decree. This would be simply a presumption of an affirmative defensive character without the slightest evidence to warrant it, and against the probabilities as disclosed by the testimony. On the contrary, the parties interested under the will seem to have acted on the presumption that Lucius C. Robert took an estate in fee, and that no proceedings were necessary to bar the remaindermen.

[11] The plea of the statute of limitations in this case made by defendant is disposed of by the case of Mitchell v. Cleveland, 76 S. C. 432, where on page 448, 57 S. E. 33, the Supreme Court of South Carolina decided that the statute of limitations, including the statute of 40 years' possession mentioned in the Code as conferring title, does not begin to run against remaindermen until the falling in of the life estate.

[12] The last question in the case, and the one which presents much difficulty, is the question as to how far the defendants in this case should not be entitled to stand in the position of purchasers for value without notice. All the records of Beaufort county, both of the register's office for the record of conveyances and the records of the court of ordinary, had been completely destroyed during the war. The first deed that appeared on record was the deed from W. M. Bostick, trustee, to Joseph W. Maner, made in 1867. That purported to convey the land in fee. And from Joseph W. Maner in 1867 the defendants have a clear succession of conveyances in fee to their possession. When the defendants came, therefore, to examine the record to see what was the title of the property they proposed to purchase, all that they could ascertain from the record was that there was on record the deed of Bostick in 1867 as trustee conveying the land in fee. There was nothing to show (that is; nothing on the *existing record*) that the land had been the property of John H. Robert, and passed under his will.

There was nothing so far as the existing record was concerned, to put the defendants on guard or advise them that Bostick was not authorized to convey an estate in fee to the property. At the same time the destruction of all of the records that would have given this notice was in no wise the fault of the plaintiffs; nor the subject of correction by them. They were not entitled to the possession of the property at that time. Lucius C. Robert had a perfect right to sell to his sister or to any one his life estate in the property, and the plaintiffs in this case were not authorized to interfere. The destruction of all records was a common casualty, proceeding from the disastrous consequences of the war, and the question here is who is to bear the burden of that destruction. The plaintiffs were wholly guiltless of any wrong conduct touching this destruction, and the defendants were equally guiltless. It would appear to be a hard case upon the defendants, at the same time it is an equally hard case upon the plaintiffs, who had an estate in remainder in this property which they were not authorized to proceed to get the benefit of until the death of the life tenant in 1897, and who are in no wise chargeable with any conduct to the defendants incompatible with their claim.

Treating the case in the most favorable aspect for defendants, it would be as if the defendants had filed a bill in equity to enjoin the plaintiffs from the further prosecution of their action at law, and to sustain the bill had invoked the equitable principles of laches or estoppel in pais against the plaintiffs. The defendants would then claim that plaintiffs knew the records had been destroyed, knew their own title, were chargeable with constructive knowledge of the deeds on the record purporting to convey title in fee to defendants and defendants' prior grantors, and knew also that defendants and such grantors were occupying and using the lands in the belief that they had acquired an absolute title to the same, and, notwithstanding all this, never took any steps to reconstitute the records so as to warn intending purchasers, nor gave, any actual notice of their claim. Would this have sustained a permanent injunction? There is nothing in the record to show any actual knowledge by the plaintiffs of these facts. They are no' doubt chargeable with knowledge of their own title and with the knowledge of the general destruction of the records; but, in the absence of proof to the contrary irrespective of the existence of deeds on the records, they are entitled to the legal presumption that, knowing that a life estate existed between them and any right of possession, they supposed that the occupants of the land held under the life tenant and for the term only of his life. There is no such actual notice to or misleading conduct by, shown on the part of, the plaintiffs that would justify, under the equitable principles either of laches or estoppel, an injunction against the plaintiffs in the assertion of any legal rights they may have. The due probating of the will of John H. Robert in 1835 was notice to all the

world, including the defendants, of its contents. The destruction of that record did not impose on the plaintiffs any duty to restore it. The Acts of December 21, 1865 (Stats. at Large, vol. 13, p. 345), of December 20, 1866 (Id., p. 384), and of 11th February, 1871 (Id., vol. 14, p. 537), conferred a privilege, but did not impose a duty punishable with the loss of right as a penalty if their provisions were not availed of. The plaintiffs had the right legally to rest on the assumption that the will of John H. Robert, as probated and recorded in 1835, was still on record and noticed by all.

The court finds as a conclusion of law that there was no legal duty under the law of South Carolina incumbent upon the plaintiffs in this case to restore the record so as to advise the defendants of the existence of the will of John H. Robert and their claims thereunder. It further holds as a conclusion of law that the plaintiffs were not either entitled or bound to take any action anterior to the death of the life tenant. It would follow from this that the plaintiffs are not in any wise to be held responsible for the insufficiency of the existing records. It was, if not incumbent upon, at least reasonable prudence for, the defendants, knowing the records to have been destroyed prior to 1865, to have made such inquiries in the neighborhood as the nature of the case permitted. Had they so done, it is evident from the testimony of Mr. W. J. Lawton that they could have ascertained that this land came from John H. Robert, and it was then within their power to have made further inquiry to find out the terms of the will of John H. Robert. It may be that had they done so, they would have still taken the view that Lucius C. Robert took a fee, and not a life estate under his father's will. This seems to have been the view taken by all the parties, including Mrs. Ann M. Robert herself, when she purchased Cotton Hill for her daughter Mrs. Cruger. This evidently was the view of Joseph W. Maner when he took the deed from Bostick, trustee. The decision of the Supreme Court of South Carolina was contrary to this view, and determines the rights of the parties, and the defendants must undergo the same consequences that befall any purchaser of land who buys under a mistaken view of the estate held by his vendor. Indeed the underlying grievance of the defendants is that the Supreme Court of South Carolina in 1900, some 65 years after the death of the testator, and 10 years after the defendant had acquired the property, placed a construction on testator's will which was at variance with the construction placed upon it by the individual purchasers and vendors of the property. This court, however, sits in such cases to follow, not to correct, that court. The construction placed by that court on the will is presumptively that which it would have placed on it in 1835.

This court therefore finds as a conclusion of law that the defendants are not entitled to the position of purchasers without notice for valuable consideration, and that plaintiffs have not been guilty of any acts to estop them, and judgment must be accordingly for the plaintiffs, and a formal judgment for the plaintiffs for the lands in dispute and costs of these actions will be entered.

### On Motion for New Trial.

An application has been made for a new trial in these cases upon the ground that the court erred in its judgment heretofore rendered upon certain conclusions of law. These may be briefly stated as follows:

1. That the court erred in holding that the remainder to the children of Lucius C. Robert under the terms of the will of John H. Robert as construed by the Supreme Court of South Carolina, was not a contingent remainder.

2. That the court should have held that such contingent remainder was barred by the presumption of the due execution of a deed of feoffment with actual livery of seisin from Lucius C. Robert to his sister, Elizabeth.

3. That this court is not bound by the decision of the Supreme Court of South Carolina, in the case of Robert v. Ellis, but must construe the will of John H. Robert for itself, and under such independent construction must hold that under a correct construction of that will Lucius C. Robert took an estate in fee under the fourth paragraph of the will, and not a life estate only.

Taking up these alleged errors in their order:

1. On the first question, it appears unavoidable to escape the conclusion that the Supreme Court of South Carolina intended to hold that the children of John H. Robert, Jr., took a vested remainder in the lands devised. The Supreme Court in the case of Robert v. Ellis holds that the "cardinal rule to be observed in the construction of a will is to ascertain, if possible, what was the real intention of the testator." Thus following the rule laid down by Chief Justice Marshall in Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322. The court then goes on to say that the plain expression of the intention of the testator, under the will taken as a whole and giving its due effect to the fourteenth clause, was that in the absence of words of perpetuity or inheritance in the fifth clause, the will could not be construed as conferring anything more than a life estate upon John H. Robert. It also proceeds to say that "if he took a fee simple absolute," or a "fee defeasible, or even a fee conditional, that would entirely defeat the provision made for his surviving children by the terms of the fourteenth clause of the will. If he took a fee either absolute or defeasible, he would, by devise or alienation, absolutely destroy the interests intended to be secured to his children by the fourteenth clause; and if he took a fee conditional, he having married and had issue born, he could likewise destroy such interests by alienation in his life time." The Supreme Court thus distinctly holds that the real intention of John H. Robert in this will was to provide for his grandchildren, and he could not be presumed to have given any estate which would be capable of destruction by the life tenant. This presumption would equally well apply against the creation of a contingent remainder, for if the estate given to John H. Robert, Jr., was an estate for life, with contingent remainder over to his children, then John H. Robert, Jr., could have destroyed the interest intended to be secured to his children in the very way in which the applicant for a new trial now contends that the law must presume Lucius C. Robert did destroy it, viz., by feoffment accompanied by actual livery of seizin.

The court, therefore, must adhere to its construction of the case of Robert v. Ellis, as being intended to find that the children of John H. Robert, Jr., took a vested interest in remainder in the property devised to him for life; and the same construction would apply to the children of Lucius C. Robert, as the devise to him is in the same language.

[13] 2. Assuming, however, that it was a contingent remainder for the purposes of the argument on this application for a new trial, would this court be in a position to presume, from lapse of time or running of possession, the making of a deed of feoffment with actual livery of seisin? Presumptions in law are never against misconduct. A presumption will be indulged in where the action presumed is one which is compatible with the honest conduct of the party against whom the presumption is made, but no presumption of dishonesty will be made. Garner v. New Orleans, 6 Wall. 642, 18 L. Ed. 950; Moses v. U. S., 166 U. S. 571, 17 Sup. Ct. 682, 41 L. Ed. 1119. Now a conveyance in fee by feoffment, with livery of seisin by a life tenant, is a tortious and unlawful act in the destruction of the contingent remainder. Archer's Case, 1 Coke, 66; Chudleight's Case, 1 Coke, 135; McElwee v. Wheeler, 10 S. C. 392. A presumption would not be indulged in to the effect that a tortious and unlawful act had been committed, and the court would not presume that a life tenant had made a deed of feoffment with livery of seisin to accomplish the tortious and unlawful destruction of the contingent remainder. This very point is substantially adjudicated in the case of Habersham v. Hopkins, 4 Strob. 238, 53 Am. Dec. 676, where the Court of Appeals of South Carolina refused to presume the execution of a deed of feoffment which would have defeated a contingent remainder, on the ground that a court was not to presume that the life tenant did what he was forbidden to do, and that "nothing dishonest or base is to be presumed in law; all presumptions are innocent and rightful; a deed will not be presumed if it could only be made in fraud and injury."

It would follow that even if the remainders under the will of John H. Robert were contingent remainders, yet this court would not presume that the life tenant had, by a tortious or unlawful act, attempted to bar them and thus

destroy the interests of the persons for whom the testator attempted by his will to provide.

[14] 3. With regard to the rules controlling the construction of a will in the federal courts, it is unnecessary to do more than to refer to them as set forth by the Supreme Court of the United States in Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. 228, in which it is laid down that this court is at liberty to come to its own conclusions on the construction of a written document such as a will, viz., that where the construction of certain words in wills of real estate had become a settled rule of property in a state that construction is to be followed by the courts of the United States, but that a single decision of a higher court of the state upon the construction of the words of a particular devise is not conclusive evidence of the law of the state in a case in a court of the United States involving the construction of the same words as between other parties than those to the case in the state court, but that the federal court is bound to lean, for the sake of harmony, to an agreement with the state court; and, where the question of law involved is deemed to be doubtful, there should not be introduced into the jurisprudence of a state the discordant elements of a substantial right which is protected in one set of courts and denied in the other, with no superior to decide which is right.

Were this court to come to its independent conclusion whether any remainder given under the will of John H. Robert was vested or contingent, it might well be to the effect that it was vested. The general rule as determined by the Supreme Court of the United States would seem to be to the effect that a devise to A. for life, with remainder to such of his children as shall be living at his death, creates a vested interest in remainder in the children subject to be divested by the death of any who may predecease the testator. Croxall v. Shererd, 5 Wall. 268, 18 L. Ed. 572; Poor v. Considine, 6 Wall. 458, 18 L. Ed. 869; Daniel v. Whartenby, 17 Wall. 639, 21 L. Ed. 661; Cropley v. Cooper, 19 Wall. 167, 22 L. Ed. 109; McAuthur v. Scott, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015; Thaw v. Ritchie, 136 U. S. 545, 10 Sup. Ct. 1037, 34 L. Ed. 531.

The court of errors of South Carolina in the case of Redfern v. Middleton, Rice, 459, would seem to have arrived at a different conclusion as to what was the rule, and held that under such language in a will the remainder was contingent. This conclusion the Supreme Court of South Carolina has adhered to in the cases of Faber v. Police, 10 S. C. 376; Roundtree v. Roundtree, 26 S. C. 470, 2 S. E. 474, and other cases. These last cases are long posterior to the date of the death of John H. Robert, Sr., and the accrual of the rights in remainder given by that will. The case of Dehon v. Redfern, in the Court of Chancery (Dud. Eq. 115), in which the South Carolina doctrine was first laid down, was decided in June, 1837, two years after the death of John H. Robert, Sr., and, giving to his will the construction of its language called for by the general rule as existing at the date of the death of John H. Robert, Sr., as laid down by the Supreme Court of the United States, the remainders given would be vested remainders.

Furthermore, it would seem that under the terms of the decision of the South Carolina Court of Appeals in Rivers v. Fripp, 4 Rich. Eq. 276, and of the Supreme Court in Seabrook v. Gregg, 2 S. C. 68, the construction of the language in a will which would create under such circumstances a contingent remainder was limited to the words "surviving" children, whereas in this case the language is not "surviving," but that if the life tenant shall "leave" a child or children. It may be said that the practical effect of the words used are synonymous, but it would be impossible otherwise to reconcile the decision of Seabrook v. Gregg with the other decisions of the court. This court now prefers to rest its opinion upon the assumption that the Supreme Court of South Carolina in its conclusion that the remainder given in the will of John H. Robert was vested, reached that conclusion upon the real intention of the testator as ascertained from his language under the settled rule of construction in the adjudicated cases, beginning with Redfern v. Dehon as limited in the cases of Rivers v. Fripp and Seabrook v. Gregg.

Lastly, it is contended that under the rule applicable to the construction of

this will as established by the Supreme Court of the United States, this court should hold that Lucius C. Robert took a fee under the will, and that the construction given to the will by the Supreme Court of South Carolina in Robert v. Ellis was erroneous, and is not binding upon this court. The will may be said to be subject to different constructions as to the effect of clause 4 in connection with clause 14 and the language or characteristic expressions used in the rest of the will. By the terms of clause 4 Lucius C. Robert was not given an absolute fee upon the death of the testator. On the contrary, the lands therein devised to him are limited over by way of executory devise to others upon the happening of the two contingencies mentioned therein. Then comes the question of how far the estate given is also limited by the language of clause 14. The Supreme Court of South Carolina has given the will one construction. Any other construction suggested by the applicants for a new trial would be at the least very doubtful, and under such circumstances, it would be the duty of this court, in coming to its independent conclusion, to lean for the sake of harmony to an agreement with the State Supreme Court, and not import into the law by the construction of this will the discordant element of a substantial right which is protected in the same state in one set of courts and denied in the other.

It is accordingly ordered that the applications for new trials be refused.

Frank R. Frost, of Charleston, S. C., and Joseph S. Clark, of Philadelphia, Pa., for plaintiffs in error.

Benj. H. Rutledge, of Charleston, S. C., for defendants in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PER CURIAM. After careful consideration of the elaborate argument of the plaintiff in error, we have no doubt that the two opinions of the District Judge, one on the original hearing and the other in denying the motion for a new trial, conclusively show that the plaintiff is entitled to recover the land in controversy; and we deem it unnecessary to restate the reasons.

Affirmed.