ANDERSON v. ANDERSON et al.

(Circuit Court of Appeals, Fourth Circuit. February 26, 1915.)

No. 1306.

1. WILLS ☞634—CONSTRUCTION—REMAINDER TO "ELDEST SON."

A testator by a will made in 1853 devised real estate to an unmarried daughter for life, "and then to go to her eldest son, and if she has no son then to be sold and the proceeds divided among her daughters." There was a further provision that, if she had no husband or children, "then the proceeds to go to her heirs, next of kin, except the eldest sons of her brother and sister." Devises to the brother and sister contained similar provisions. The daughter married and had a son, who died when ten years old. She afterward had other children, leaving at her death two sons and three daughters surviving. *Held*, that the term "eldest son," as used in such clause, meant the first son born to the life tenant, and not the eldest son surviving her, and that on the birth of her first son the remainder became vested in him.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. ☞634.

For other definitions, see Words and Phrases, Eldest.]

2. WILLS ☞634—CONSTRUCTION—"VESTED REMAINDER."

A remainder vests when there is a person in being who would have the right to immediate possession upon the determination of the intervening particular estate, and is never to be held contingent when, consistently with the testator's intention, it can be held vested.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. ☞634.

For other definitions, see Words and Phrases, First and Second Series, Vested Remainder.]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit in equity by William Wallace Anderson against Benjamin Mackenzie Anderson, in his own right and as executor of Mary Virginia Anderson, deceased, and others. Decree for defendants, and complainant appeals. Affirmed.

Joseph A. Edge, of Lexington, Ky., and Hill Carter, of Richmond, Va. (Mitchell & Smith, of Charleston, S. C., on the brief), for appellant.

William H. Lyles, of Columbia, S. C. (Lyles & Lyles, of Columbia, S. C., on the brief), for appellees.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. This is an appeal from a decree of the United States District Court for the district of South Carolina, entered on the 21st day of March, 1914, in the cause in equity pending in said court, wherein the appellant was plaintiff, and the appellees the defendants, and which construed certain provisions of the will of the late Gen. Thomas Childs, the grandfather of the appellant and appellees.

[1] Gen. Childs was a brigadier general in the army of the United States, and by his last will and testament, dated the 12th day of March, 1853, duly admitted to probate in the corporation court of the city of Alexandria, Va., on the 7th day of February, 1854, after making certain specific bequests, bequeathed and devised the remainder of his estate, most of which was located in Virginia, to his wife Ann Eliza Childs for life, remainder over to his three children, Catherine R. Woodbury, Frederick L. Childs, and Mary Virginia Childs, in equal shares. The testator devised to his daughter Mary Virginia Childs, whose estate is involved in this litigation, certain real estate, in the following language:

"To my beloved daughter Mary Virginia Childs I give the rent & income of my house on St. Asaph Street situated in the City of Alexandria & State of Virginia to have & to hold the same for sole benefit during her natural life & then to go to her eldest son, if she has no son, then to be sold & the proceeds divided among her daughters, to share & share alike; if she have no children then to go to her husband; but if she have no husband then the proceeds to go to her heirs next of kin, except the eldest sons of her brother & sister who have been provided for in this Will & Testament."

And he likewise devised to his other two children upon identical terms and conditions, save as to description, each, other real estate. The testator by a further clause of his will provided that his personal property, which consisted of stock in various "corporations, banks and states," should be held by his said three children on the same terms as those on which they took his real estate, and at their death pass to the same persons and in the same manner as in the case of the real estate devised to them. At the time of the death of the testator, his daughter Mary Virginia was unmarried, and subsequently, on the 27th of December, 1855, intermarried with and became the wife of Dr. William Wallace Anderson, a citizen of South Carolina, and they long resided in the town of Statesboro, Sumter county, in that state, where

they both died; Dr. Anderson on the 27th of June, 1911, and his wife, the said Mary Virginia Anderson, on the 15th day of December, 1912. The estate of the said Mary Virginia Anderson, including the proceeds of the sale of her real estate devised to her as aforesaid, was transferred to and held by her in her new home. As a result of this marriage, there were born to the said Mary Virginia Anderson ten children, seven sons and three daughters, namely, Woodbury Anderson, the first child, born January 9, 1857, who died March 23, 1867, more than ten years old, and five other sons and three daughters, two of the latter born prior to the birth of the appellant, William Wallace Anderson, on the 20th of November, 1869, and one subsequently thereto. Four of the brothers died in infancy, none of them living more than $2\frac{1}{2}$ years; the three daughters, Elizabeth Watties Anderson, born on the 8th of June, 1859, Ann Catherine, on the 8th of October, 1864, and Mary Virginia, on the 26th of October, 1872, and Benjamin Mackenzie Anderson, a son, born on the 30th of January, 1875, being, together with the husbands of the said three daughters, the appellees herein.

The question for consideration by the court is the correct interpretation of the clause in the will of the late Gen. Childs, hereinbefore quoted, namely, "to have & to hold the same for the sole benefit during her natural life & then to go to her eldest son; if she has no son, then," &c., and particularly what is meant by "then to go to her eldest son," as used in said clause. The contention of the appellant is that that language should be construed to mean the eldest son of his mother, living at the time of her death, and that he would thereby take the entire estate to the exclusion of his brother and three sisters, whereas appellees insist that by "eldest son," as used in said clause, is meant the first born to their parents, and that the estate devised and bequeathed to their mother for life vested in their eldest brother, Woodbury Anderson, who was born in 1857, and lived for more than ten years, the enjoyment of his estate being postponed until the death of his mother; and that at the death of their mother, the said Woodbury having died in her lifetime, the entire estate passed to his next of kin and heirs at law, and now vests in the appellant and the four appellees, who take the property in equal shares.

In the construction of wills, the prime effort should be to reach and give effect to the testator's intent. The parties in interest are diametrically at variance as to what this meaning is, and the court must ascertain, if possible, from the instrument itself, what the testator intended by the use of the language employed by him. What did the testator mean? The suggestion is not without force, especially considering the exact language was used as to the estate devised to each of his children, that the testator by the term "eldest son" had in view the old law of primogeniture, and intended that his property should be perpetuated in the eldest son of each of his children, otherwise there would have been apparently no good reason for limiting such devise to the sons, as distinguished from the daughters, of his children. The qualifying clause at the end of the devise to each child "but if she have no husband, then the proceeds to go to her heirs, next of kin,

except the eldest sons of her brother and sister who have been provided for in this last will and testament," excludes expressly the eldest sons from taking any interest in the absence of children and husbands in the estates of each of the three children of the testator, Gen. Childs, and likewise gives support to the contention of appellees that the testator referred, not to the eldest son living at the time of the death of the life tenant, but to the eldest son of each child of his for whom provision had been specifically made. Eldest son, in this connection, is in no sense qualified by the adverb "then," or any language whatever, and only the first born male could have been intended, who would be clearly cut out of sharing with his brothers and sisters, in portions of the estate of his grandfather in the contingency covered by the last sentence of the clause in question.

It is impossible, however, to say with certainty, from the instrument itself, what the testator did mean, and we must therefore arrive at a conclusion as to his intent from the language used, viewed in the light of the rules of interpretation properly applicable in such cases, among them that intestacy is to be avoided, if possible; that the vesting of the estate at the earliest possible period is favored, in the absence of a clear manifestation of the testator to the contrary; that a remainder should never be held to be contingent, where, consistently with the intention of the testator, it can be held to be vested, and that estates once vested will not be divested except where the intention so to do is clear.

Considerable authority is cited as to the meaning of the words "eldest son" primarily, appellees' contention being that it means the eldest son born, and they insist when adverbs of time, as where, thereafter, from, etc., are used in a devise of a remainder of an estate, such words relate to the time of the enjoyment of the estate, and not to the time of the vesting of the interest therein, citing Doe v. Considine, 73 U. S. (6 Wall.) 458, 18 L. Ed. 869, and cases therein referred to; Driver v. Frank, 3 Taunt. 468; Bathhurst v. Errington, L. R. 2 App. 699; Meredith v. Traffery, 12 Ch. Div. 171.

[2] These decisions strongly support the appellees' contention, and would go far to determine the court's action in construing this will, if there were doubt, in the light of the rules of interpretation hereinbefore recited, as to whether the estate taken by the remainderman was vested or contingent. The determining feature of a vested remainder is whether there exists a remainderman; that is, one in esse possessed of the present capacity to take the estate into possession immediately the particular estate fell in, or upon the determination of such particular estate.

"A vested remainder is defined to be one 'limited to a certain person, and on a certain event, so as to possess a present capacity to take effect in possession should the possession become vacant.'" Fearne's Remainders, 216.

Chancellor Kent says of a vested remainder that:

"It is when there is a person in being who would have the immediate right to the possession of the land, upon the ceasing of the intermediate precedent estate." 4 Kent's Com. 216.

And Prof. Minor says:

"The present capacity to take effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent." 2 Minor, Inst. 337.

The Supreme Court of the United States, speaking through Mr. Justice Swayne in the case of Croxall v. Shererd, said:

"The struggle with the courts has always been for that construction which gives to the remainder a vested rather than a contingent character. A remainder is never held to be contingent when, consistently with the intention, it can be held to be vested. If an estate be granted for life to one person— and any number of remainders for life to others in succession—and finally a remainder in fee simple or fee tail, each of the grantees of a remainder for life takes at once a vested estate, although there be no probability, and scarcely a possibility, that it will ever, as to most of them, vest in possession. * * * It is the present capacity to take effect in possession, if the precedent estate should determine, which distinguishes a vested from a contingent remainder. Where an estate is granted to one for life, and to such of his children as should be living after his death, a present right to the future possession vests at once in such as are living, subject to open and let in after-born children, and to be divested as to those who shall die without issue. A remainder, limited upon an estate tail, is held to be vested, though it be uncertain whether it will ever take effect in possession. * * * A vested remainder is an estate recognized in law, and it is grantable by any of the conveyances operating by force of the statute of uses." Croxall v. Shererd, 72 U. S. (5 Wall.) 268, 287, 288 (18 L. Ed. 572).

And speaking through the same learned Justice, in Doe v. Considine, said:

"A vested remainder is where a present interest passes to a certain and definite person, but to be enjoyed in futuro. There must be a particular estate to support it. The remainder must pass out of the grantor at the creation of the particular estate. It must vest in the grantee during the continuance of the estate, or eo instanti that it determines. A contingent remainder is where the estate in remainder is limited either to a dubious and uncertain person, or upon the happening of a dubious and uncertain event." Doe v. Considine, supra, 73 U. S. (6 Wall.) 458, 474 (18 L. Ed. 869).

To the two cited cases, and the authorities therein referred to, special reference is made, as containing a full exposition of the doctrine of remainders, contingent and vested. The decisions of the states of South Carolina and Virginia are each in full accord with those of the United States Supreme Court, and only a few need be mentioned. South Carolina: Bankhead v. Carlisle, 1 Hill Eq. 357; Donald v. McCord, Rice Eq. 330; Bentley v. Long, 1 Strob. Eq. 43, 47 Am. Dec. 543. From Virginia: Catlett v. Marshall, 10 Leigh, 79, 88; Crew's Adm'r v. Hatcher, 91 Va. 378, 21 S. E. 811; Lantz v. Massie, 99 Va. 714, 40 S. E. 50; Allison v. Allison, 101 Va. 569, 44 S. E. 904, 63 L. R. A. 920.

We think there can be no doubt of what the law applicable to this case is, and that a remainder vests when there is a person in being who would have the right to possession immediately upon the determination of the intervening particular estate, and that it is never to be held a contingent interest, when, consistently with intention, it can be held vested. Applying these rules here, Woodbury Anderson, the eldest son of the marriage between Dr. William Wallace Anderson and

Mary Virginia, his wife, who was born January 9, 1857, and died in South Carolina on March 23, 1867, took a vested remainder, under his grandfather's will, in the property devised to his mother for life; and at his death his interest therein passed to his next of kin and heirs at law, the enjoyment thereof only being postponed until the death of his said mother; and at the time of her death, she having survived her husband, alike under the laws of the states of South Carolina and Virginia, the estate passed to the sole surviving children of said marriage, namely, the appellant, William Wallace Anderson, and the appellees Benjamin Mackenzie Anderson, Elizabeth Watties Reynolds, Ann Catherine Saunders, and Mary Virginia Nelson, in equal shares.

The conclusions herein reached are in consonance with the well-recognized rule that the law favors an equal distribution of an estate among those of the same degree of relationship to the common ancestor, and hence leans to vesting estates, where an opposite construction would exclude those who have either a strong claim upon the maker of the devise, or cut them off from participating in the division of the estate, without apparent reason. 2 Fearne on Remainders, (4th Am. Ed.) § 215. Manifestly there can be no good reason for, or justice in the claim of, the appellant, William Wallace Anderson, that he should take the entire interest under the devise in his grandfather's will, to the exclusion of his brother and sisters, especially when so to do would lead to an interpretation that would have excluded the heirs at law and next of kin of his elder brother, Woodbury Anderson, the child for whom the grandfather had alone made provision, had there been such.

A large number of authorities have been cited by counsel on the respective sides, but it is not considered practicable to undertake, within the reasonable length of this opinion, to go into a review of the same, further than to say they have been fully considered, and are not believed to contain views inconsistent with those expressed herein having regard to the facts of the case.

The decree of the lower court will be affirmed, at the cost of the appellant.

Affirmed.