In the Matter of the Application for the Construction of the Last Will and Testament of HARRIET E. SMITH, Deceased.

MARIA DUNCKEL, Petitioner, and Another, Appellants; BERTRAM MOLL, as Administrator with the Will Annexed of HARRIET E. SMITH, Deceased, Respondent.

Third Department, May 16, 1923.

Wills — construction — bequest providing that after death of testatrix's husband and sale of property all the residue should go absolutely to sister of testatrix — if sister was not alive at final settlement of estate, property was bequeathed to sister's husband — sister's husband took contingent remainder in residue which did not lapse.

The will of the testatrix bequeathed a life estate in her personal property to her husband and provided that after his death the personal and real property should be sold and a certain sum paid to a cemetery association and it then provided that " after the death of my said husband, and after the sale of my property * * * I then give, devise and bequeath to my beloved sister Minerva E. Williams all the residue or remainder of my property, absolutely, to have and to hold forever, providing she shall be alive at the final settlement of my said estate; otherwise I give, devise and bequeath my said property to my brother-in-law, Willis H. Williams, absolutely, to have and to hold the same forever." Neither of the remaindermen survived the life tenant and the brother-in-law died before the sister of the testatrix.

Held, that the brother-in-law took a contingent remainder in the residue which did not lapse upon his death prior to the death of the life tenant.

APPEAL by the petitioner, Maria Dunckel, and another, from a decree of the Surrogate's Court of the county of Otsego, entered in the office of said Surrogate's Court on the 2d day of December, 1922, construing the will of Harriet E. Smith, deceased.

*Edward R. Hall* [*George H. Hall* of counsel], for the appellants.

*Cooke & Basinger* [*Harris L. Cooke* of counsel], for the respondent Bertram Moll, as administrator, etc.

*Barnum Brothers*, for the Middlefield Center Cemetery Association.

HASBROUCK, J.:

The appeal from the decree herein of the surrogate brings up for review the construction of the will of Harriet E. Smith which provides in part that she bequeathed a life estate in her personal property to her husband and that after his death the personal and real property should be sold and out of its proceeds $500 should be given to the Middlefield Center Cemetery Association and used for the upkeep of the lot of testatrix in the cemetery and the remainder to be disposed of as follows:

" V. And after the death of my said husband, and after the sale of my property, and the payment of the said $500 to the Cemetery Association, I then give, devise and bequeath to my beloved sister Minerva E. Williams all the residue or remainder of my property, absolutely, to have and to hold forever, providing she shall be alive at the final settlement of my said estate; otherwise I give, devise and bequeath my said property to my brother-in-law, Willis H. Williams, absolutely, to have and to hold the same forever."

Neither of the remaindermen survived the life tenant, who died July 23, 1922. Willis H. Williams died September 16, 1921, and Minerva, his wife, died October seventh, following.

The surrogate has held that Willis took a vested remainder in the real estate subject to being divested by the survival of his wife of the final settlement of the estate of the testatrix. Maria Dunckel and Nancy Bates, heirs at law of the testatrix, challenge the correctness of the decision of the surrogate upon two grounds: *First*, that the remainder in Willis was but a contingent remainder; *second*, that by the death of Willis prior to that of his wife and that of the life tenant his legacy lapsed. The provisions of the will providing for the sale of all the property, both real and personal, requires that all of it should be regarded as personal since equity regards that as done at the time it is by will directed to be done. (*Manice* v. *Manice*, 43 N. Y. 372.)

Regarded as personal its vesting is not changed in the law by the use of the words " after the death of my said husband," " after the sale of my property." The use of such words does not affect the postponement of the vesting of an estate where it is apparent from other provisions that a vesting was intended. (*McGillis* v. *McGillis*, 154 N. Y. 541.) Here it is apparent from the fact that the personal estate was given to the husband of the testatrix for life and its vesting in possession postponed until his death that the testatrix contemplated by the use of the words above quoted and the direction to convert the real estate into personal property at a future day that the vesting of the whole estate being similar in character should take place at the same time. If this be so then the effect

of the disposition was to confer upon Minerva Williams a remainder in both real and personal property to take effect in possession at the death of the life tenant. Until the death of the life tenant there was no person in being who would have an immediate right of possession. Further, until her death the event remained uncertain as to whether the remainder to Willis would or would not vest. In other words, there was no person to whom one could absolutely point as the one who would come into the ownership of the residuary estate until the life tenant or Minerva died. (*Moore* v. *Littel*, 41 N. Y. 71; *Minot* v. *Minot*, 17 App. Div. 521.)

If this reasoning be correct then the interest of Willis was but an estate in expectancy (Real Prop. Law, § 59), hanging on the survival by Minerva of the life tenant. It follows that the quality of the remainder to Willis was contingent. (*Moore* v. *Littel, supra; Dougherty* v. *Thompson*, 167 N. Y. 487; *Roosa* v. *Harrington*, 171 id. 353; *Woodbridge* v. *Bockes*, 170 id. 608; *Williams* v. *Peabody*, 8 Hun, 271.)

I have treated the time of " final settlement " under the will as the time of death of the life tenant. (*Clason* v. *Clason*, 18 Wend. 369; *Manice* v. *Manice*, 43 N. Y. 373.)

The appellants argue that if the remainder of Willis be held to be contingent because Willis died before the life tenant and before his wife Minerva, the gift over to him lapsed. A legacy is held to have lapsed where it has never vested or taken effect which " ' fails because the capacity or willingness of the donee to take has ceased to exist before he obtained a vested interest in the gift.' " (*Booth* v. *Baptist Church*, 126 N. Y. 242.) There seems to be a line of cases which hold that the legacy in question has lapsed. (*Williams* v. *Seaman*, 3 Redf. 148; *Matter of Yerks*, 107 App. Div. 241.)

In the *Yerks* case no less authority than Mr. Justice BARTLETT, afterwards chief judge of the Court of Appeals, said: " She is entitled to that remainder if it was vested in John C. Clark during the pendency of the widow's life estate; if, on the other hand, it was contingent, the defendant, Adaline Yerks Van Alstyne, is entitled to the share devised to John C. Clark by the 9th paragraph." (*Minot* v. *Minot*, 17 App. Div. 521 ) In that case RUMSEY, J., said: " It is quite true that this remainder was subject to be divested by his death before the death of his mother, but none the less during his life is it vested in him, and the fact that it may be divested does not deprive him of the interest which is given to him by his father by the plain terms of the bequest." (*Fulton Trust Co.* v. *Phillips*, 218 N. Y. 580.) In that case Judge SEABURY, writing for the Court of Appeals, said: " Yet if the gift contained in the residuary clause was contingent, as claimed by

the appellants, the testatrix must be held to have died intestate as to this portion of her residuary estate." (See, also, *Clark* v. *Cammann*, 160 N. Y. 315; Redf. Surr. [5th ed.] 611, and cases cited; *Madison* v. *Larmon*, 170 Ill. 65; 62 Am. St. Rep. 356.)

The claim that the legacy to Willis has lapsed having the authority of the above cases apparently to support it, except in cases where the bequest or devise has been made to legatees as a class or the legatees or devisee has died before the testator (*Moffett* v. *Elmendorf*, 152 N. Y. 483), has been determined otherwise.

The leading case on the subject is that of *Hennessy* v. *Patterson* (85 N. Y. 91). In that case one John Foley made a will in which, among other things, he gave his property to his daughter and children born of her and living after her death, and in case of her death without leaving issue, to his nephew, John Foley. Margaret, the daughter, married, and died in 1878 leaving no children. John Foley died in 1876. In the action between the husband of Margaret and the heirs of Foley the court held that Foley's heirs were entitled to the property of the testator.

That case in principle seems to be decisive of the case at bar. It was held that while John Foley took but a contingent remainder under the will that remainder under the Revised Statutes precedent of section 59 of the Real Property Law was an estate in expectancy and that Foley " had something more than a mere possibility of acquiring an estate; he had the fixed, absolute right to have the estate if the contingency occurred. That right was conferred by the will of the testator and vested in him at the instant of the latter's death." The estate given was held not to be a vested remainder as held by the General Term; but that the remainder was contingent and besides, an expectant estate.

The framers of the Revised Statutes as contained in section 59 of the Real Property Law undertook to embody the reason of the common law as to contingent remainders and estates in expectancy in crediting them with the qualities of alienability, devisability and descendibility.

There had been so much controversy in the law about these qualities in such gifts that in a sort of desperation Lord KENYON, Chief Justice of the King's Bench, said: " I sincerely hope that this point will be now understood to be perfectly at rest." (*Jones* v. *Roe*, 1 Rev. Eng. Rep. 656; 3 T. R. 88, affg. 1 H. Bl. 30; *Hennessy* v. *Patterson*, though criticized in *Minot* v. *Minot, supra,* has been followed by the Court of Appeals until to-day; *Dougherty* v. *Thompson, supra; Roosa* v. *Harrington, supra.*)

Though the result of this discussion is to separate the inheritance of the testatrix from the blood the intention of the testator is so

clear that the rule of construction which requires interpretation giving preference to blood relatives (*Clark* v. *Cammann, supra*) has no place. The claimants to the estate must be held to the effect of the serious language of the testatrix which gives her property to her sister if she survives the husband of the testatrix; if not to her brother-in-law. Such gift if limited by no provision is unqualified and in the terms of the will itself is described as " absolute."

The decree of the surrogate should be affirmed, with costs against the appellants.

Present — H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK, HINMAN and HASBROUCK, JJ. KILEY, J., concurs in result on the ground that title vested in Willis H. Williams at the time of the death of the testatrix, under the provisions of section 40 of the Real Property Law.

Decree unanimously affirmed, with costs to all parties payable out of the estate.