ELIZABETH B. WALLACE, EXECUTRIX UNDER THE LAST WILL AND
TESTAMENT OF EMMA A. MILLER, DECEASED, PETITIONER, *v.* COM-
MISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 59414, 59970.   Promulgated March 11, 1933.

*Cedric A. Major, Esq.*, for the petitioner.
*Eugene Smith, Esq.*, for the respondent.

904

SMITH: The sole issue presented by these proceedings is whether the value of the trust fund is to be included in the decedent grantor's gross estate under section 302 of the Revenue Act of 1926 which, in so far as material hereto, is as follows:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

    \*       \*       \*       \*       \*       \*       \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

The trust instrument here under consideration was irrevocable and created a life estate in the grantor (first clause), a remainder interest in the daughter (third clause), and a possibility of reversion in the grantor (fourth clause). The interest of the decedent in the property rights fixed by this trust instrument "must be determined by the laws of the place where the estate is to be administered." See *Commissioner* v. *Jones*, 62 Fed. (2d) 496, citing *Crooks* v. *Harrelson*, 282 U. S. 55. The decedent's estate was administered under the laws of the State of New York, where real property laws are applied in the determination of personal property rights. See Book 40, McKinney's Consolidated Laws of New York, Annotated, p. 16, *et seq.;* and see also note "Vested or contingent remainders of personal property," p. 54, Book 49, McKinney's, etc. Section 40 of the Real Property Law (Book 49, McKinney's, etc.), is as follows:

*When future estates are vested; when contingent.* A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain.

The test of vesting applied by the New York courts has been stated as follows:

If you can point to a man, woman or child who, if the life estate should now cease, would, *eo instanti et ipso facto*, have an immediate right of possession, then the remainder is vested.

See *Moore* v. *Littel*, 41 N. Y. 66, and other cases cited on p. 55 of Book 49, McKinney's, etc.; and also *Matter of Smith* (1923), 205 App. Div. 499; 200 N. Y. S. 538.

The law of New York with respect to such estates was approved by the Supreme Court of the United States as early as *Croxall* v. *Shererd*, 5 Wall. (72 U. S.) 268, 287, wherein it was said:

The struggle with the courts has always been for that construction which gives to the remainder a vested rather than a contingent character. A remainder is never held to be contingent when, consistently with the intention, it can be held to be vested. If an estate be granted for life to one person, and any number of remainders for life to others in succession, and finally a remainder in fee simple or fee tail, each of the grantees of a remainder for life takes at once a vested estate, although there be no probability, and scarcely a possibility, that it will ever as to most of them, vest in possession.

Chancellor Kent says the definition of a vested remainder is thus fully and accurately expressed in the Revised Statutes of New York. It is, "when there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate precedent estate."

It is the present capacity to take effect in possession, if the precedent estate should determine, which distinguishes a vested from a contingent remainder. Where an estate is granted to one for life, and to such of his children as should be living after his death, a present right to the future possession vests at once in such as are living, subject to open and let in after-born children, and to-be divested as to those who shall die without issue. A remainder, limited upon an estate tail, is held to be vested, though it be uncertain whether it will ever take effect in possession. * * *

In *Doe* v. *Considine*, 6 Wall. (73 U. S.) 458, 474, 475, 476, is the following:

A vested remainder is where a *present* interest passes to *a certain and definite* person, but to be enjoyed *in futuro*. There must be a particular estate to support it. The remainder must pass out of the grantor at the creation of the particular estate. It must vest in the grantee during the continuance of the estate, or *eo instanti* that it determines.

A contingent remainder is where the estate in remainder is limited either to a dubious and uncertain person, or upon the happening of a dubious and uncertain event.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

The law will not construe a limitation in a will into an executory devise when it can take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested.

It is a rule of law that estates shall be held to vest at the earliest possible period, unless there be a clear manifestation of the intention of the testator to the contrary.

Adverbs of time—as *where, there, after, from, &c.*—in a devise of a remainder, are construed to relate merely to the time of the enjoyment of the estate, and not the time of the vesting in interest.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"When a remainder is limited to a person *in esse and ascertained,* to take effect by *express limitation,* on the termination of the preceding particular estate, *the remainder is unquestionably vested.*"

This rule is thus stated with more fulness by the Supreme Court of Massachusetts. "Where a remainder is limited to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event *that must unavoidably happen by the efflux of time*, the remainder vests in interest as soon as the remainder-man is *in esse* and ascertained, provided nothing but his own death before the determination of the particular estate, will prevent such remainder from vesting in possession; yet, if the estate is limited over to another in the event of the death of the remainder-man before the determination of the particular estate, his vested estate will be subject to be devested by that event, and the interest of the substituted remainder-man which was before either an executory devise or a contingent remainder, will, if he is *in esse* and ascertained, be immediately converted into a vested remainder."

In 4th Kent's Commentaries, 282, it is said: "This has now become the settled technical construction of the language and the established English rule of construction." It is added: "It is the uncertainty of *the right* of enjoyment, and not the uncertainty of *its actual enjoyment*, which renders a remainder *contingent*. The present capacity of taking effect in possession—if the possession were to become vacant—distinguishes a vested from a contingent remainder, and not the certainty that the possession will ever become vacant while the remainder continues."

Subsequent decisions of the Supreme Court have followed the above principles (see *Cropley* v. *Cooper*, 19 Wall. (85 U. S.) 167; *McArthur* v. *Scott*, 113 U. S. 340, 378, 379; *Thaw* v. *Ritchie*, 136 U. S. 519, 546; and *Johnson* v. *Washington Loan & Trust Co.*, 224 U. S. 224, 237, 238), which were also followed by the lower Federal courts (see *Pineland Club* v. *Robert*, 213 Fed. 545, 556; *Aetna Life Ins. Co.* v. *Hoppin*, 214 Fed. 928, 933; *Anderson* v. *Anderson*, 221 Fed. 871, 875. See also I Cooley's Blackstone, Book II, Chap. XI), p. 424, *et seq.*; III Thompson on Real Property, sections 2139, 2140, 2148. See also III Bouvier's Law Dictionary (Rawles Third Revision), p. 2869.

This same question was considered at some length by the Supreme Court in *Coolidge* v. *Long*, 282 U. S. 582, wherein the incidence of the Massachusetts succession tax upon certain remainder interests was involved. These remainder interests were created:

By voluntary deeds of trust, [by which] a husband and wife transferred real and personal property, owned by them severally in certain proportions, to trustees, in trust to pay the income in those proportions to the settlors during their joint lives and then the entire income to the survivor of them, and upon the death of the survivor to divide the principal equally among the settlors' five sons, provided that, if any of the sons should predecease the survivor of the settlors, the share of that son should go to those entitled to take his intestate property under the statute of distribution in force at the death of such survivor. The deeds reserved no power of revocation, modification or termination prior to the death of the survivor of the settlors. * * *

In holding that:

By the deed of each grantor one-fifth of the remainder was vested in each of the sons, subject to be devested only by his death before the death of the

survivor of the settlors. It was a grant *in praesenti*, to be possessed and enjoyed by the sons upon the death of such survivor. * * *

And in further holding that the sons' interests were not subject to the succession tax, the court adverted to numerous decisions relating to remainder interests and, *inter alia*, said:

By the deed of each grantor one-fifth of the remainder was immediately vested in each of the sons subject to be divested only by his death before the death of the survivor of the settlors. It was a grant *in praesenti* to be possessed and enjoyed by the sons upon the death of such survivor. *Blanchard* v. *Blanchard*, 1 Allen 223. *Clarke* v. *Fay*, 205 Mass. 228. *McArthur* v. *Scott*, 113 U. S. 340, 379, and cases cited. And see *United States* v. *Fidelity Trust Co.*, 222 U. S. 158. *Henry* v. *United States*, 251 U. S. 393. The provision for the payment of income to the settlors during their lives did not operate to postpone the vesting in the sons of the right of possession or enjoyment. The settlors divested themselves of all control over the principal; they had no power to revoke or modify the trust. *Coolidge* v. *Loring, supra,* 223. Upon the happening of the event specified without more, the trustees were bound to hand over the property to the beneficiaries. Neither the death of Mrs. Coolidge nor of her husband was a generating source of any right in the remaindermen. *Knowlton* v. *Moore*, 178 U. S. 41, 56. Nothing moved from her or him or from the estates of either when she or he died. There was no transmission then. The rights of the remaindermen, including possession and enjoyment upon the termination of the trusts, were derived solely from the deeds. The situation would have been precisely the same if the possibility of divestment had been made to cease upon the death of a third person instead of upon the death of the survivor of the settlors. The succession, when the time came, did not depend upon any permission or grant of the Commonwealth. While the sons if occasion should arise might by appropriate suit require the trustees to account, it is to be borne in mind that the property was never in the custody of the law or of any court. Resort might be had to the law to enforce the rights that had vested. But the Commonwealth was powerless to condition possession or enjoyment of what had been conveyed to them by the deeds. *Barnitz* v. *Beverly*, 163 U. S. 118, and cases cited.

The fact that each son was liable to be divested of the remainder by his own death before that of the survivor of the grantors does not render the succession incomplete. The vesting of actual possession and enjoyment depended upon an event which must inevitably happen by the efflux of time, and nothing but his failure to survive the settlors could prevent it. *Blanchard* v. *Blanchard, supra.* *Moore* v. *Lyons*, 25 Wend. 119, 144. Succession is effected as completely by a transfer of a life estate to one and remainder over to another as by a transfer in fee. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, 347–348. The recent case of *Saltonstall* v. *Saltonstall*, 276 U. S. 260, furnishes a good illustration of incomplete succession. There the remainder was liable at any time during the settlor's life to be divested through the exertion of the power of alteration and revocation that was reserved in the instrument creating the trust. The decision sustaining a transfer tax went upon the ground that "the gift taxed is * * * one which never passed to the beneficiaries beyond recall until the death of the donor. * * * A power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax. * * * The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another." P. 271. See also *Chase Nat. Bank* v. *United States*, 278 U. S. 327, 335, 338.

No Act of Congress has been held by this court to impose a tax upon possession and enjoyment, the right to which had fully vested prior to the enactment.

By the trust instrument executed in 1920, Elizabeth V. Bulen, the grantor's daughter, was given " an immediate right to the possession " of the trust estate " upon the ceasing of the intermediate precedent estate," in which event she came into actual possession of the trust estate by reason of an event (the death of the grantor), " that must unavoidably happen by the efflux of time " and nothing but her " own death before the determination of the particular estate " could have prevented her right to the possession and thereby divesting her right by that event. In the light of the above authorities, we conclude that Elizabeth V. Bulen's interest in the trust propery vested as soon as the trust instrument was executed in 1920, and that the mere postponement of the " actual enjoyment " of the trust property did not render her remainder contingent. She took a vested remainder subject to being divested by her death prior to the death of the grantor, an event which did not happen.

The respondent, in effect, contends that Elizabeth V. Bulen took only a contingent remainder, which ripened into a vested interest upon the death of the grantor in 1928, when the daughter for the first time acquired definite property rights from the decedent. In support of this contention the respondent cites *Sargent* v. *White*, 50 Fed. (2d) 410, affirming 46 Fed. (2d) 79; *Klein* v. *United States*, 283 U. S. 231; *Chemical Bank & Trust Co. et al., Executors*, 25 B. T. A. 1153. While those cases are compatible with the respondent's position, they are distinguishable from the instant proceedings on their facts.

In *Sargent* v. *White, supra*, the District Court found that the decedent had " transferred to trustees in 1921 certain property to be held in trust during the joint lives of himself and his wife. On the death of either, the trust terminated and the survivor took the property." The report of that case indicates that the court considered Remick and his wife as joint tenants and that " Remick's death had, as was said in *Tyler* v. *United States, supra*, [281 U. S. 497], ' the effect of passing to the survivor substantial rights, in respect of the property, theretofore never enjoyed by such survivor. * * * Thus the death of one of the parties to the tenancy became the " generating source " of important and definite accessions to the property rights of the other.' " However, the District Court's decision was based on *Commissioner* v. *Morsman*, 44 Fed. (2d) 902, which was reversed by the Supreme Court in *Morsman* v. *Burnet*, 283 U. S. 784. In affirming the District Court, the Circuit Court of Appeals for the First Circuit quoted from the trust instrument as follows:

\* \* \* If I survive my wife, Mary H. Remick, then upon the decease of my said wife, Mary H. Remick, said trust shall cease and the Trustees shall pay over, transfer, deliver and convey the Trust Estate absolutely free and discharged of every trust to me, said Frank W. Remick. If, however, my said wife, Mary H. Remick, survives me, then the Trustees shall upon my death pay over, transfer, deliver and convey the trust estate absolutely free and discharged of every trust to my said wife, Mary H. Remick.

The Circuit Court held that:

It was clearly the intent of the decedent that the trust funds should not become absolutely vested during his life, \* \* \* Upon his death and as a result, the entire trust funds then passed to his wife. See *Klein* v. *United States*, 51 S. Ct. 398, 75 L. Ed., decided by the Supreme Court April 13, 1931, which differs from this case to this extent that the grantor by deed transferred a life estate in some real property directly to his wife, expressly reserving to himself the fee, which, or as in this case the absolute title to the trust funds, passed to the wife at his death in case she survived him.

In *Klein* v. *United States*, *supra*, the Supreme Court quoted the clauses of the deed there under consideration and said:

The two clauses of the deed are quite distinct—the first conveys a life estate; the second deals with the remainder. The life estate is granted with an express reservation of the fee, which is to "remain vested in said grantor" in the event that the grantee "shall die prior to the decease of said grantor." By the second clause the grantee takes the fee in the event—"and in that case only"—that she shall survive the grantor. It follows that only a life estate immediately was vested. The remainder was retained by the grantor; and whether that ever would become vested in the grantee depended upon the condition precedent that the death of the grantor happen *before* that of the grantee. The grant of the remainder, therefore, was contingent. See 2 Washburn, Real Property (4th Ed.) pp. 547, 548, 559, par. 1. The decisions of the Supreme Court of Illinois, the state where the deed was made and the property lies, support this conclusion. *Haward, et al.* v. *Peavey*, 128 Ill. 430, 439, 21 N. E. 503, 15 Am. St. Rep. 120; *Baley* v. *Strahan*, 314 Ill. 213, 217, 145 N. E. 359.

\* \* \* Nothing is to be gained by multiplying words in respect of the various niceties of the art of conveyancing or the law of contingent and vested remainders. It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed. Compare *Tyler* v. *United States*, 281 U. S. 497, 50 S. Ct. 356 \* \* \*

In *Chemical Bank & Trust Co. et al., Executors, supra,* the grantor gave to his estranged wife a life estate or until the trust was terminated in accordance with its provisions, after which the trustees were to convey the property to the grantor, but if he was not living upon the termination of the trust the property was to go to his children. The property was included in the husband's gross estate on the ground that his children did not take a vested remainder interest in the trust property. It is obvious that the husband by

the instrument had the right to the remainder or reversion of the trust property upon the termination of the life estate and that the children merely had an interest contingent upon their outliving their father. The children, though *in esse* at the creation of the trust estate, had no immediate right to possession upon the termination of the particular estate; so long as the grantor lived that " immediate right to possession " was vested in him, subject to divesting by his death, an event which *eo instanti* gave to the children a vested interest in the corpus, theretofore the children had a mere contingent interest.

By the terms of the instruments involved in the cases relied upon by the respondent, the rights to the property included in the particular decedent's gross estate could not and did not vest absolutely in the grantee until the grantor's death—which was the " generating source of important and definite accessions to the property rights of the survivor." In each, the grantor reserved the remainder interest in the property; the grantee's interest did not ripen into a vested interest until the death of the grantor; and in the *Chemical Bank & Trust Co.* case the grantor was the only person *in esse* who had the immediate right to the possession of the trust property upon the termination of the precedent estate. By the terms of the instrument involved in the instant proceedings the grantor took a life estate, the grantee took a vested remainder—subject to be divested by her death prior to the death of the grantor, who retained a mere possibility of reversion. The law and decisions of the courts of New York (referred to above), " the state where the deed was made and the property lies, support this conclusion." Cf. *Klein* v. *United States, supra,* p. 232.

In *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339, the Government argued that:

* * * the transfers of the remainder interests were all subject to the tax because, * * * they were "intended to take effect in possession or enjoyment at or after his [the grantor's] death."

The court pointed out that even if the grantor had made himself the trustee:

* * * the transfer would not for that reason have been incomplete, The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made. His power to recall the property and of control over it for his own benefit then ceased and as the trusts were not made in contemplation of death, the reserved powers [of management] do not serve to distinguish them from any other gift *inter vivos* not subject to the tax.

In holding that the trust property in the *Reinecke* v. *Northern Trust Co.* case was not subject to Federal estate tax, the Supreme Court said:

In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred. * * * One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift *inter vivos*, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute. * * * In the light of the general purpose of the statute and the language of section 401 explicitly imposing the tax on net estates of decedents, we think it at least doubtful whether the trusts or interests in a trust intended to be reached by the phrase in section 402 (c) " to take effect in possession or enjoyment at or after his death," include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under section 401. That doubt must be resolved in favor of the taxpayer. * * *

*Reinecke* v. *Northern Trust Co.*, *supra*, was followed in *May* v. *Heiner*, 281 U. S. 238; wherein it was held that property transferred to a trustee with " a life estate in one with remainder over to another at or after the donor'e death " was not to be included in the donor's gross estate. In the *May* case the Supreme Court pointed out that:

* * * At the death of Mrs. May [the donor] no interest in the property held under the trust deed passed from her to the living; title thereto had been definitely fixed by the trust deed. The interest therein which she possessed immediately prior to her death was obliterated by that event.

*May* v. *Heiner*, *supra*, was followed *per curiam* in *Burnet* v. *Northern Trust Co.*, 283 U. S. 783; *McCormick* v. *Burnet*, 283 U. S. 784; and *Morsman* v. *Burnet*, *supra*. These *per curiam* decisions affirm the Board's decisions reported at 9 B. T. A. 96; 13 B. T. A. 423; and 14 B. T. A. 108, respectively. In the *McCormick* case, as in the instant proceedings, there was a possibility of the trust property reverting to the grantor in the event that the beneficiaries predeceased her. That event did not happen and apparently made no difference in the Supreme Court's decision, although some point was made of this possibility of reversion before the Circuit Court of Appeals which reversed the Board, 43 Fed. (2d) 277, and which in turn was reversed by the Supreme Court.

On March 3, 1931 (the day following the announcement of the above *per curiam* decisions), Congress amended section 302 (c) by passing House Joint Resolution 529, which is as follows:

*Resolved, etc.*, That the first sentence of subdivision (c) of section 302, of the revenue act of 1926, is amended to read as follows:

(c) To the extent of any interest therein of which the decedent has at any time made a transfer by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period

not ending before his death (1) the possession or enjoyment of or the income from the property, or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

In proposing this resolution in the House, Mr. Hawley, Chairman of the Ways and Means Committee, said:

Mr. Speaker and gentlemen, the Supreme Court yesterday handed down a decision to the effect that if a person creates a trust of his property and provides that, during his lifetime, he shall enjoy the benefits of it, and when it is distributed after his death it goes to his heirs—the Supreme Court held that it goes to his heirs free of any estate tax.

This resolution is to provide that hereafter such shall not be the law. This decision will cost the Treasury of the United States $25,000,000. That is, it will necessitate refunds in that amount. The Treasury does not know how many such trusts will be found before Congress meets again, but the opinion is that a great many will be, and it will take a very large sum from the Treasury unless this corrective legislation is enacted.

\*      \*      \*      \*      \*      \*      \*

Yesterday afternoon the Supreme Court of the United States handed down decisions in three cases—Burnet against Northern Trust Co., Morsman against Burnet, and McCormick against Burnet—in which the court held that where an owner of property had made a transfer in trust reserving the income of the property, or the right to dispose of the income therefrom, to himself for his life, with remainder to others after his death, the value of the property should not be included in the estate of the donor for purposes of Federal estate tax upon his death.

\*      \*      \*      \*      \*      \*      \*

It had generally been considered that this provision of the statute covered cases such as those referred to above. The Treasury Department had so construed the statute since the first Federal estate tax law in 1916 and its regulations so provide. If, for example, the owner of property transferred the title to his house to a trustee for the benefit of his children after his death, but in the meantime reserved the use, income, and enjoyment of the house to himself during his own lifetime, it was supposed that the value of the property at the date of his death should be included in his estate for purposes of estate tax. Under the decisions rendered yesterday the property would not be included in computing the Federal estate tax.

It is entirely apparent that if this situation is permitted to continue, the Federal estate tax will be seriously affected. Entirely apart from the refunds that may be expected to result, it is to be anticipated that many persons will proceed to execute trusts or other varieties of transfers under which they will be enabled to escape the estate tax upon their property. It is of the greatest importance therefore that this situation be corrected and that this obvious opportunity for tax avoidance be removed. It is for that purpose that the joint resolution is proposed.

Similar statements were made in the Senate by Senator Smoot, Chairman of the Finance Committee, in presenting this joint resolution. See pages 7017 and 6933 of Volume 74 of the Congressional Record, Seventy-First Congress, Third Session. Thus, Congress undertook, without retroactive application, "to stop up the gap" and prevent trust estates (such as the one now before the Board)

from escaping the incidence of the estate tax; however, this amendment not being retroactive has been applied only to transfers "made after 10:30 P. M. * * * March 3, 1931." See Treasury Decision 4314; see also *Charles H. W. Foster et al., Executors*, 26 B. T. A. 708.

There is no contention in the instant proceedings that the transfer made by the decedent in 1920 was made in contemplation of death. Elizabeth V. Bulen's interest in the trust property vested upon the execution of the trust instrument in 1920, and the death of the grantor was not the generating source of definite accession to the survivor's property rights but merely the obliteration of the decedent's life estate, upon which event the daughter came into possession of property, to which her rights had been fixed and vested upon the execution of the trust instrument in 1920. There was no transfer from the dead to the living upon which to levy the estate tax. The value of the trust property was incorrectly included in the decedent's gross estate. *May* v. *Heiner, supra; McCormick* v. *Burnet, supra; Nanaline H. Duke et al., Executors*, 23 B. T. A. 1104; affd., 62 Fed. (2d) 1057; *Stephen Peabody et al., Executors*, 24 B. T. A. 787. Cf. *Charles H. W. Foster et al., Executors, supra.*

Reviewed by the Board.

*Judgment will be entered for the petitioner.*